1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

ALLIANCE PACKAGING LLC, a
Washington limited liability company,

10

Plaintiff,

C07-112Z

11

v.

CLAIM CONSTRUCTION
ORDER

12

SMURFIT-STONE CONTAINER
CORPORATION, a Delaware corporation, et
al.,

13

14

Defendants.

15

16

17

        This matter comes before the Court pursuant to <u>Markman v. Westview Instruments,</u>

18

<u>Inc.</u>, 52 F.3d 967 (Fed. Cir. 1995), <u>aff'd</u> 517 U.S. 370 (1996), to construe various terms of

19

the patent at issue in this case.  The Court held a hearing on February 19, 2008.  The Court

20

has reviewed all of the briefing, the records and files herein, and now enters the following

21

Order.

22

I.      BACKGROUND

23

        On January 24, 2007, Alliance Packaging, LLC ("Alliance") filed a complaint against

24

Altivity Packaging, LLC ("Altivity"), alleging infringement of its patent for a container with

25

26

ORDER   1–

an integrated spout.  Compl., docket no. 1, ¶¶ 24-27.[1]  The patent at issue is U.S. Patent No.

7,156,287 (the " '287 Patent").  Compl. ¶ 20, Ex. A.  The parties now ask this Court to

construe three claim terms contained in independent product claims 1 and 6, and claims

dependent thereon, of the '287 Patent: (1) "lower side," (2) "acute angle," and (3) "cover the

concavity."

## II.   LEGAL STANDARD FOR CLAIM CONSTRUCTION

Claim construction is "a matter of law exclusively for the court," even if the case is

designated to go to a jury trial.  Markman, 52 F.3d at 970-71.  "While a judge is well-

equipped to interpret the legal aspects of the [patent] document, he or she must also interpret

the technical aspects of the [patent] document, and indeed its overall meaning, from the

vantage point of one skilled in the art."  Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d

1298, 1309 (Fed. Cir. 1999).

To interpret the claims of a patent, a court considers "the intrinsic evidence of record:

the claim, the specification, and, if in evidence, the prosecution history."  Metabolite Labs.,

Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1373 (Fed. Cir. 2004).  The intrinsic

evidence is "the most significant source of the legally operative meaning of disputed claim

language."  Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).

Within the intrinsic evidence, a court first looks "to the words of the claims themselves, both

asserted and non-asserted, to define the scope of the patented invention."  Vitronics, 90 F.3d

at 1582.  "It is a bedrock principle of patent law that the claims of a patent define the

invention to which the patentee is entitled the right to exclude."  Phillips v. AWH Corp., 415

F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotations and citations omitted).  The words of a

claim "are generally given their ordinary and customary meaning."  Id. (quoting Vitronics, 90

F.3d at 1582).  "[T]he ordinary and customary meaning of a claim term is the meaning that

---

[1] Alliance also sued Smurfit-Stone Container Corporation for breach of contract.  Compl. ¶¶ 22-23.

ORDER   2–

1    the term would have to a person of ordinary skill in the art in question at the time of the

2    invention, i.e., as of the effective filing date of the patent application." Id. at 1313.

3         Claims are also read in light of the patent specification, which includes the abstract,

4    background of invention, summary of invention, and detailed description sections of the

5    patent.  See Signtech USA, Ltd. v. Vutek, Inc., 174 F.3d 1352, 1355 (Fed. Cir. 1999).  At the

6    same time, a court must avoid importing limitations from the specification into the claims.

7    Phillips, 415 F.3d at 1323.  The Federal Circuit has "cautioned against limiting the claimed

8    invention to preferred embodiments or specific examples in the specification."  Teleflex, Inc.

9    v. Ficosa N. Am. Corp., 299 F.3d 1313, 1328 (Fed. Cir. 2002) (citations omitted); see also

10   Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1117 (Fed. Cir.

11   2004) (stating that "particular embodiments appearing in the written description will not be

12   used to limit claim language that has broader effect").

13        In addition to consulting the specification, "a court should also consider a patent's

14   prosecution history, if it is in evidence."  Phillips, 415 F.3d at 1317 (quoting Markman, 52

15   F.3d at 980).  The prosecution history "consists of the complete record of the proceedings

16   before the [United States Patent and Trademark Office] and includes the prior art cited

17   during the examination of the patent."  Id.  The prosecution history can demonstrate "how

18   the inventor understood the invention and whether the inventor limited the invention in the

19   course of prosecution, making the claim scope narrower than it would otherwise be."  Id.

20   Although the prosecution history may provide an "interpretive context" for the claims,

21   "courts may not read limitations into the claims."  Rambus Inc. v. Infineon Techs. AG, 318

22   F.3d 1081, 1088 (Fed. Cir. 2003).

23        In addition to intrinsic evidence, a court may also consider extrinsic evidence, which

24   "consists of all evidence external to the patent and prosecution history, including expert and

25   inventor testimony, dictionaries, and learned treatises."  Phillips, 415 F.3d at 1317 (citations

26   omitted).  Extrinsic evidence is most useful to help a court understand the underlying

ORDER  3–

1   technology and the way in which one skilled in the art might use the claim terms.  See id. at

2   1318; Pitney Bowes, 182 F.3d at 1309.  Extrinsic evidence, however, is less reliable than

3   intrinsic evidence in determining "the legally operative meaning of claim language."

4   Phillips, 415 F.3d at 1317-19 (citations omitted).  Courts may rely on extrinsic evidence to

5   construe claim terms only if "the patent documents, taken as a whole, are insufficient to

6   enable the court to construe disputed claim terms."  Pitney Bowes, 182 F.3d at 1308-09; see

7   also Interactive Gift Express, Inc. v. Compuserve, Inc., 256 F.3d 1323, 1332 (Fed. Cir.

8   2001).

9   **III.   DISCUSSION**

10          **A.     "Lower Side"**

11                  **1.     Claim Language**

12          Independent Claims 1 and 6 of the '287 Patent refer to a "lower side" of a spout.

13   Claim 1 of the '287 Patent recites "a spout formed from a planar portion of the inner panel

14   and comprising a ***lower side*** hingedly connected to the inner panel allowing the spout to

15   pivot between a first closed position and a second extended position."  '287 Patent at col. 5,

16   ll. 46-49 (emphasis added); see also '287 Patent at col. 7, ll. 26-30 (Claim 6).

17                  **2.     Proposed Constructions**

18          Alliance asks the Court to construe "lower side" as follows:

19          "The side along the bottom of the spout that hingedly connects to the inner
            panel; in an embodiment containing a spout with a center panel and two
20          wing panels, the lower side of the center panel."

21   Joint Claim Chart, docket no. 41, at 1.  Specifically, referring to Figure 3 of the '287 Patent,

22   Alliance contends that a "lower side" comprises lower hinge segment 26 only.  '287 Patent,

23   Fig. 3.  Alliance relies on the claims, on the specification, on some drawings within the

24   specification, on the opinion of Alliance's expert, Dr. Diana Twede, and on dictionary

25   definitions.

26

ORDER   4–

1    Altivity asks the Court to construe "lower side" as follows:

2        "The entire bottom portion of the spout."

3   Joint Claim Chart at 1.  Specifically, referring to Figure 3 of the '287 Patent, Altivity

4   contends that a "lower side" comprises lower hinge segment 26 *and* lower edge segments

5   32a and 32b.  Altivity relies on the claims, on the specification, on the drawings within the

6   specification, on the opinion of Altivity's expert, Dr. Albert V. Karvelis, and on dictionary

7   definitions.

8            **3.      Intrinsic Evidence Within the '287 Claim Language**

9        The Court rejects Altivity's proposed construction for several reasons based on the

10  Court's examination of the claim language.  First, Altivity's proposed construction of "lower

11  side," i.e., "the ***entire*** bottom portion of the spout," reads into the claim element a limitation,

12  "entire," that is not present in the claims or, for that matter, in the specification.  The claims

13  and the specification allow for a "lower side" to be defined as lower hinge segment 26 only.

14  Thus, the "lower side" term should not be subject to an "entire" limitation that is not present

15  in the intrinsic evidence.

16       Second, Claims 1 and 6 require ". . . ***allowing the spout to pivot*** between a first closed

17  position and a second extended position."  '287 Patent, Claim 1, col. 5, line 48; '287 Patent,

18  Claim 6, col. 7, II. 28-29 (emphasis added).  Altivity has conceded that a spout hingedly

19  connected to the inner panel across the entire bottom portion of the spout "cannot pivot

20  between different positions as required by the claims."  Altivity's Prehearing Statement,

21  docket no. 43, at 7:1-2.  Thus, by its own admission, Altivity's proposed construction of a

22  "lower side" is fundamentally inconsistent with the requirement stated in Claims 1 and 6 that

23  the hinged connection allow the spout to pivot between two different positions.  The Court

24  must construe a "lower side" to allow the spout to pivot in order to be consistent with the

25  other limitation in the claim.

26

ORDER  5–

Third, the Court rejects Altivity's argument based on the doctrine of claim differentiation.  The doctrine of claim differentiation gives rise to a presumption that there is "a difference in meaning and scope when different words or phrases are used in separate claims."  Tandon Corp. v. United States Int'l Trade Comm'n, 831 F.2d 1017, 1023 (Fed. Cir. 1987).  "To the extent that the absence of such a difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant."  Id.  Altivity invokes the doctrine of claim differentiation to argue that the use of the term "lower hinged segment" in independent method Claim 4, which directly corresponds to the "lower hinge segment 26" language used in the specification,[2] must carry a different meaning than the term "lower side" in independent product Claims 1 and 6.  Independent method Claim 4 recites:

> ". . . forming a first fold line on a portion of the inner panel to form a ***lower hinged segment*** of the spout interposed between first and second lateral edge hinged segments of the spout . . ."

'287 Patent, col. 6, II. 52-55.  The doctrine of claim differentiation does not apply here because giving the term "lower hinged segment" the same meaning and scope as the term "lower side" does not make any claim superfluous.  Claim 4 is an independent claim, not a dependent claim on Claims 1 and 6.  Moreover, the Federal Circuit has recently stated that "claims may cover the same subject matter in different words."  Oatey Co. v. IPS Corp., --- F.3d ---, 2008 WL 239186, at *5 (Fed. Cir. Jan. 30, 2008) (citing Tandon Corp., 831 F.3d at 1023).

Fourth, the Court rejects Altivity's argument that Claim 1 uses the word "side" to refer to a two-dimensional surface, and not a one-dimensional edge.  Altivity observes that

---

[2] The Court notes that the specification does not use the term "lower side."  Thus, the intrinsic evidence, as a whole, does not preclude a construction of "lower side" that is synonymous with "lower hinge segment 26."

ORDER  6–

1  Claim 1 recites: ". . . center panel having an upper *side* forming a dispensing portion of the

2  spout . . . ." '287 Patent, col. 5, II. 51-52.  Altivity argues that this "upper side" must be a

3  two-dimensional surface in order to dispense content.  Altivity then argues that a "lower

4  side" must also be two-dimensional in order to be consistent with usage of the term "side" in

5  Claim 1.  Altivity asserts that a "lower side" defined by edges 26, 32a and 32b comprises a

6  two-dimensional area.

7       The Court finds Altivity's two-dimensional argument unconvincing.  First, it is not

8  clear that the "center panel having an upper side forming a dispensing portion of the spout"

9  requires the "upper side" to be a two-dimensional surface.  The term "upper side" may, in

10  fact, be referring to recess edge 28, the upper concave edge of center panel 22, i.e., the edge

11  that the contents of the box dispense over.  See '287 Patent, Fig. 3.  Second, a lower side

12  defined by edges 26, 32a and 32b does not form a two-dimensional surface, but rather three

13  sides that exist in two dimensions.  Third, Altivity neglected to point out other uses of the

14  word "side" in Claims 1 and 6 wherein the word "side" is used to refer to a one-dimensional

15  edge.  See, e.g.,'287 Patent, col. 5, II. 63-64 ("the first tab having an upper side hingedly

16  connected to the outer panel . . . "); '287 Patent, col. 8, II. 8-9 ("the first tab having an upper

17  side hingedly connected to the first panel . . . ").  These references to "upper side" in Claims

18  1 and 6 appear to be referring to the one-dimensional upper hinge segment 54 of tab 52.  See

19  '287 Patent, Fig. 4.  The Court concludes that the use of the term "side" in Claims 1 and 6

20  indicates that a "side" could be a one-dimensional edge.

21       Lastly, Altivity's proposed construction of a "lower side" as consisting of three sides

22  is called into doubt by the claims' use of the singular form of the noun "side" to refer to a

23  single edge or segment, and the use of the plural form "sides" to refer to more than one edge

24  or segment.  Compare, e.g., Claim 1, '287 Patent, col. 5, line 47 ("a lower side"), line 51

25  ("an upper side"), line 64 ("an upper side"), line 67 ("a curvilinear lower side"), col. 6, II. 7-

26  8 ("a lower side") with Claim 1, col. 5, line 54 ("two opposing lateral sides").

ORDER  7–

1    The claim language of the '287 Patent supports a construction of "lower side" as

2    meaning one edge or segment, not three edges or segments.

3                    **4.      Intrinsic Evidence Within the '287 Figures**

4    Altivity argues that the Court should construe a "lower side" to mean "[t]he entire

5    bottom portion of the spout" because the three edges 26, 32a and 32b are depicted in the

6    drawings of the three-panel embodiment as dashed "FOLD LINES."  See '287 Patent, Figs.

7    2, 3, 5, 9.  Alliance contends that it made a mistake during the prosecution of the patent in

8    labeling edges 32a and 32b as fold lines in the drawings associated with the three-panel

9    embodiment, i.e., in Figures 2-9.  Alliance's Opening Br., docket no. 47, at 15:10-12 ("When

10   Figure 10 [depicting the two-panel embodiment] was revised to show fold lines 32a/b,

11   however, segments 32a/b were incorrectly changed in the other Patent Figures as well.").

12   This "mistake" is supported by the fact that Figure 9, which offers a perspective view of the

13   interior of the three-panel embodiment, shows that edges 32a and 32b must be cut and not

14   folded if the spout is to be able to pivot.  Notwithstanding the perspective view in Figure 9,

15   Alliance has failed to offer any admissible evidence of its "mistake."  Accordingly, the Court

16   must construe the claims in light of the drawings in the '287 Patent showing edges 32a and

17   32b as fold lines.

18   Altivity argues that because the fold line extends across the entire bottom portion of

19   the spout, the term "lower side" must include the bottom portion of the spout's left wing

20   panel, center panel, and right wing panel.[3]  The Court disagrees.  Even if all three edges are

21   folded, that does not compel a construction that all three edges comprise the "lower side" of

22   

_____

23   [3] In further support of its proposed construction, Altivity points out that the drawings use an
     arrow to identify spout 20 in Figures 3 and 5, and that the arrow points to spout wing portion
24   30b and to edge 32b; from this, Altivity infers that edges 32a and 32b must be attached to the
     container by a hinge.  No such inference can be drawn from the position of the arrow in
25   Figures 3 and 5, especially in light of Figures 6, 7 and 9, in which the arrow used to identify
     spout 20 merely points in the spout's general direction.  The Court finds Altivity's "arrow"
26   argument unpersuasive.

ORDER   8–

the spout.  Moreover, Altivity is asking the Court to import limitations from the specification into the claims and to confine the claims to the embodiments of the invention outlined in the specification, contrary to the rules governing claim construction.  See Phillips, 415 F.3d at 1323.  In Phillips, the specification did not depict baffles at right angles.  Id. at 1329.  Nevertheless, the Federal Circuit held that the angles of the baffles depicted in the diagrams would not be imported as a limitation into the claims to preclude baffles at right angles.  See id. at 1324-1327.  Here, the Court will not import the fold lines limitation from the drawings in the Figures 2-9 into the claims to require that a "lower side" encompass all three lower edges.

### 5. Intrinsic Evidence Within the '287 Written Description

Using text from the specification, Alliance contends that only "lower hinge segment" 26 of the spout's central panel is hingedly connected to the inner panel:

"Spout 20 is hingedly linked to panel 12a ***at lower hinge segment 26***."

'287 Patent, col. 3, ll. 40-41 (referring to Figures 2 and 3).

"The spout remains contiguous with the first panel at a ***lower hinge segment; otherwise, it is separate or separable from the first panel.***"

'287 Patent, col. 1, ll. 46-48.

"In addition, ***spout 20 will pivot about lower hinge segment 26***, causing inward pivoting of the wings 30a/b about their respective lateral hinge segments 24a/b."

'287 Patent, col. 4, ll. 62-65 (referring to Figure 6).  Alliance reasons that if edges 32a and 32b were also meant to be hingedly connected to the inner panel, the specification would

ORDER  9–

have indicated so, just as it explicitly did for segment 26.[4]  The Court agrees with Alliance's position.  The Court also emphasizes that the last excerpt above shows that the wing panels are hinged at segments 24a and 24b, not at segments 32a and 32b.  See also '287 Patent, col. 3, II. 27-29 ("To permit the required deflection of wings 30a and 30b, lateral hinge segments 24a and 24b are provided . . . ").

Altivity attempts to support its proposed claim construction for a "lower side" using text from the specification.  First, Altivity notes that the specification states that "[s]pout 20 comprises central portion 22, and lateral wings 30a and 30b."  '287 Patent, col. 3, II. 26-27.  Because the spout includes all three panels, Altivity infers that the spout's "lower side" must include the lower side of all three panels.  Altivity's position that a "side" is three sides reads a limitation into the claims that is not consistent with the claim language.  Second, Altivity notes that the specification states that there are "several Figures wherein ***like numerals indicate like parts***."  '287 Patent, col. 3, II. 14-15 (emphasis added).  This statement merely indicates that 32a and 32b are bottom sides of the wing panels in all the figures, but it does not mean that 32a and 32b must be hinged in the preferred embodiment (i.e., in Figures 2-9) just because they are hinged in the alternative embodiment (i.e., in Figure 10).  Compare '287 Patent, col. 3, II. 48-49 (preferred embodiment describing 32a and 32b as "lower edge segments" without any reference to being hingedly connected to the inner panel) with '287 Patent, col. 3, II. 63-65 (alternative embodiment stating that "wings 30a/b may be hingedly connected to the inner panel at . . . wing lower segments 32a/b").  A comparison of other parts shows that parts with the same number may have different characteristics in different embodiments.  See, e.g., '287 Patent, Figs. 3 and 10 (showing that wings 30a/b have

---

[4] Altivity asserts that "the specification provides . . . that each of the wings is attached to the container by hinged connection 32a and 32b."  Altivity's Opening Br., docket no. 46, at 8:19-22 (citing '287 Patent, col. 2, lines 26-27, 49-50).  Even assuming that Altivity meant to cite to the '287 Patent at column 3, lines 26-27 and lines 49-50, the specification does not state what Altivity says it states.

ORDER  10–

1  different shapes in different embodiments).  Altivity has failed to provide persuasive support

2  for its proposed claim construction using text from the specification.

### 6.    Intrinsic Evidence Within the Patent Prosecution History

4       On January 16, 2004, Alliance filed U.S. Provisional Patent Application No.

5  60/536,904.  Joint Claim Chart, Ex. 2 (the " '287 Patent Prosecution History") at 102.  The

6  provisional patent included preliminary drawings, showing edges 32a and 32b as cut lines,

7  not fold lines.  See, e.g., '287 Patent Prosecution History, at 115 (Fig. 3).

8       On August 23, 2004, Alliance filed a non-provisional Patent Application No.

9  10/924,529, claiming priority to the provisional patent.  '287 Patent Prosecution History at

10  56.  Again, the drawings showed edges 32a and 32b as cut lines, not fold lines.  See, e.g.,

11  '287 Patent Prosecution History at 84 (Fig. 3).  The non-provisional patent application also

12  contained a two-panel embodiment that had not been included in the provisional patent

13  application.  '287 Patent Prosecution History at 91 (Fig. 10).

14      On March 27, 2006, the patent examiner issued an Office Action, objecting, in

15  pertinent part, to Figure 10, which was a drawing of the two-panel embodiment.  '287 Patent

16  Prosecution History at 40-43.  Specifically, the examiner stated:

17     "2. The drawings are objected to under 37 CFR 1.83(a) because they fail to
       show a connection between the spout *in the embodiment of figure 10* and the
18     panel 12a as described in the specification.  It is not understood how the
       embodiment will operate nor how the spout is to be attached.  *Figure 10 is*
19     *showing cut lines separating the spout from the rest of the panel. . . .*"

20
       '287 Patent Prosecution History, at 42-43, ¶ 2 (emphasis added).
21
22      On August 28, 2006, the patent attorney returned an Office Action Response.  '287

    Patent Prosecution History, at 13-37.  The attorney submitted substitute drawings for all the
23
24  figures.  In the response, the attorney wrote:

25     "The Examiner also states that drawings fail to show a connection between the
       spout in the embodiment of Figure 10 and panel 12a.  However, *lines 32a and*
26     *32b are hinged connections, not cut lines*, as described in the specification, in
       the paragraph beginning at page 6, line 7.  *The Figures have been amended to*

ORDER   11–

1    ***clarify this by indicating all fold lines on the container panels with dashed
2    lines.***"

3    '287 Patent Prosecution History at 21 (emphasis added).

4        Notably, the paragraph referred to by the patent attorney, starting at page 6, line 7 of

5    the application as filed, describes the two-panel embodiment. '287 Patent Prosecution

6    History at 73.  Regardless, the attorney modified Figures 2-9, which pertain to the three-

7    panel embodiment, to depict edges 32a and 32b as fold lines, not cut lines; the substituted

8    figures appear in the issued '287 Patent. '287 Patent, Figs. 2-10.

9        Altivity observes that: (1) Alliance's prosecuting patent attorney explicitly stated that

10   "lines 32a and 32b are hinged connections, not cut lines;" and (2) Alliance's attorney

11   substituted in folded lines during prosecution.  '287 Patent Prosecution History at 21.

12   Altivity asserts that, in light of this prosecution history, edges 32a and 32b must be

13   considered a part of the lower side of the spout that is hingedly connected to the inner panel.

14       The prosecution history, like the patent itself, is ambiguous.  On the one hand,

15   original drawings were submitted with the provisional patent application, indicating that

16   edges 32a and 32b were cut lines for the three-panel embodiment at issue, supporting

17   Alliance's position. '287 Patent Prosecution History at 115 (Fig. 3).  Similarly, drawings

18   submitted with the non-provisional patent application depicted edges 32a and 32b as cut

19   lines for the three-panel embodiment, again supporting Alliance's position. '287 Patent

20   Prosecution History at 84 (Fig. 3).  On the other hand, in the Office Action Response,

21   Alliance modified the drawings and expressly depicted edges 32a and 32b as fold lines, and

22   these drawings were subsequently incorporated into the issued patent. '287 Patent

23   Prosecution History at 30 (Fig. 3); '287 Patent, Figs. 2-9.

24       Prosecution history estoppel arises when an applicant has "clearly and unambiguously

25   disclaimed or disavowed any interpretation during prosecution in order to obtain claim

26   allowance." Middleton, Inc. v. Minnesota Mining and Mfg. Co., 311 F.3d 1384, 1388 (Fed.

1   Cir. 2002) (internal quotations and citations omitted).  There are at least two ways that the

2   doctrine of prosecution estoppel can be invoked.  First, "a patentee's decision to narrow his

3   claims through amendment may be presumed to be a general disclaimer of the territory

4   between the original claim and the amended claim."  Festo Corp. v. Shoketsu Kinzoku

5   Kogyo Kabushiki Co., 535 U.S. 722, 740-41 (2002).  Second, assertions made in support of

6   patentability, whether or not required to secure allowance of the claim, may also give rise to

7   estoppel.  Texas Instruments, Inc. v. United States Int'l Trade Comm'n, 988 F.2d 1165,

8   1174-75 (Fed. Cir. 1993).

9       Altivity argues that, by modifying the drawings of the three-panel embodiment to

10  indicate edges 32a and 32b as fold lines, Alliance "expressly abandoned the only disclosure

11  that supported its proposed claim construction."  Altivity's Opening Br. at 12-13.  However,

12  the modification to the drawings was not in response to overcoming a citation to prior art or

13  a specific objection of the Patent Examiner.  Additionally, Altivity points out that Alliance

14  modified the claims at issue in its Office Action Response.  The record shows there was a

15  massive set of amendments to claim text, and there is nothing to suggest that the term, "lower

16  side," was introduced to overcome prior art or to otherwise abandon a construction of "lower

17  side" as being one edge or segment.  '287 Patent File History at 2-7.  For these reasons, the

18  Court does not apply the doctrine of prosecution estoppel to preclude Alliance's proposed

19  construction of "lower side."

20              **7.    Extrinsic Evidence for Construction of a "Lower Side"**

21      Courts may rely on extrinsic evidence to construe claim terms if "the patent

22  documents, taken as a whole, are insufficient to enable the court to construe disputed claim

23  terms."  Pitney Bowes, 182 F.3d at 1308-9.  "Such instances will rarely, if ever, occur."  Id.

24  Although both parties cite dictionary definitions and refer to expert reports to support their

25  proposed constructions, both parties claim that the intrinsic evidence alone is sufficient to

26  justify their proposed constructions.  Altivity's Opening Br. at 14:4-5 ("[T]he Court need not

ORDER   13–

1  look to or rely upon extrinsic evidence."); Alliance's Resp. Br., docket no. 51, at 15:3-4

2  ("[T]he intrinsic evidence on all of the disputed terms is so clear and compelling that no

3  expert testimony is required to construe them.").  The Court does not consider the submitted

4  extrinsic evidence because the intrinsic evidence, as a whole, is sufficient to enable the Court

5  to construe "lower side."

6              **8.    Conclusion Re: "Lower Side"**

7         For the reasons outlined above, the intrinsic evidence favors Alliance's proposed

8  construction.  Moreover, to the extent the claim is still ambiguous after applying all the tools

9  of claim construction, the Court acknowledges the maxim that "claims should be construed

10  to preserve their validity."  Phillips, 415 F.3d at 1327.  Here, the spout would be inoperative

11  if edges 32a and 32b are construed as part of a "lower side" hingedly connected to the inner

12  panel.  Accordingly, the Court adopts Alliance's proposed construction, and construes the

13  term "lower side" as follows:

14         "A side along the bottom of the spout that hingedly connects to the inner panel;
           in an embodiment containing a spout with a center panel and two wing panels,
15         the lower edge of the center panel."

16     **B.    "Acute Angle"**

17          **1.    Claim Language**

18         Independent Claims 1 and 6 of the '287 Patent refer to an "acute angle" formed

19  between an inner surface of each wing panel and the inner panel of the container.  Claim 1

20  recites:

21

22         ". . . an inner surface of each wing panel forming an obtuse angle with an inner
           surface of the center panel and an ***acute angle*** with the inner panel when the
23         spout is in the second position . . ."

24  '287 Patent, col. 5, ll. 55-59.

25         Similarly, Claim 6 recites:

26

". . . an inner surface of each wing panel forming an obtuse angle with an inner surface of the center panel and an ***acute angle*** with the second panel when the container is formed and the spout is in the second position . . ."

'287 Patent, Claim 6, col. 7, line 36 - col. 8, line 4.

### 2.    Proposed Constructions

Alliance asks the Court to construe "acute angle" as follows:

"The angle between the inner surface of each wing panel and the inner panel when the spout is in the second (open) position."

Joint Claim Chart at 3.

Altivity asks the Court to construe "acute angle" as follows:

"The angle that is measured between the inner (i.e., interior facing) surface of the fully deployed wing panel and the second (i.e., interior facing) panel."

Joint Claim Chart at 3-4.

### 3.    "Acute Angle" Term Not in Dispute

Both parties agree that an acute angle means an angle less than ninety degrees. Altivity's Opening Br. at 15 n.6 ("There should be no dispute that an acute angle must be less than 90°. . ."); Alliance's Opening Br. at 19:10-14 (discussing the creation of the acute angle as getting components "within 90 degrees of one another"). The Court accordingly construes "acute angle" as "an angle that measures less than ninety degrees."

### 4.    Clause Regarding the Measurement of Acute Angle in Dispute

The parties' dispute is not based on different constructions of "acute angle" per se but rather different views of how that acute angle is measured. More specifically, the parties' dispute is focused on the clause regarding the measurement of the acute angle in Claims 1 and 6: ". . . ***an inner surface of each wing panel forming . . . an acute angle with the***

ORDER   15–

1    *inner/second panel*. . . ."[5]  The "inner panel" in Claim 1 is the "second panel" in Claim 6.

2    Both terms refer to the inside panel of the two overlapping sidewall panels.

3       Although Alliance's proposed construction mirrors the claim language almost word-

4    for-word, and therefore is not particularly helpful, Alliance's discussion of its proposed

5    construction indicates that Alliance would measure the acute angle as being formed between

6    the inner surface of each wing panel and the *plane* of the inner/second panel.  Alliance's

7    Resp. Br. at 10:18-11:9; Joint Claim Chart, Ex. 5 (Alliance's Expert, Dr. Diana Twede's

8    Report) at 5-6.  In contrast, Altivity's proposed construction adds the words "interior facing"

9    to the term inner/second panel, and Altivity would measure the acute angle as being formed

10   between the inner surface of each wing panel and the inner surface of the inner/second panel.

11   Joint Claim Chart, Ex. 3 (Karvelis Decl.) ¶¶ 19-23.

12                  **5.**    **Intrinsic Evidence**

13       Altivity's proposed construction effectively reads an "inner surface" limitation into

14   the reference to inner panel that is not present in the claims.  Altivity's proposed construction

15   is also inconsistent with the specification because the only way to form an acute angle

16   between the inner surface of each wing panel and the inner surface of the inner panel of the

17   container would be to have a spout that was pointed into the container.  Such a result is

18   inconsistent with Figures 6, 7 and 9 of the '287 Patent and is also inconsistent with the

19   description of the spout "as outward pivoting."  '287 Patent, col. 4, line 65, col. 5 lines 5, 23.

20

21

22

---

23   [5] Claims 1 and 6 both provide that the acute angle is measured when "the spout is in the

24   second position."  Alliance's proposed construction interprets the "second position" language to mean that the spout is in the "second (open) position," and Altivity's proposed

25   construction interprets this language to mean that the wing panel is "fully deployed."  These are two different ways of saying the same thing because the wing panels are fully deployed

26   when the spout is open.  The Court concludes there is no dispute with regard to the "second position" term in Claims 1 and 6.

ORDER   16–

Although Alliance's proposed construction effectively reads a "plane" limitation into the reference to the inner panel, such a limitation is consistent with the specification, which, as noted above, requires the spout to be outward pivoting.

### 6.   Conclusion Re: Clause Measuring Acute Angle

The Court adopts Alliance's proposed construction, with a modification, and construes the clause ". . . an inner surface of each wing panel forming . . . an acute angle with the inner/second panel . . . ," as follows:

> ". . . an inner surface of each wing panel forming . . . an angle that measures less than ninety degrees with the plane of the inner/second panel . . ."

### C.   "Cover the Concavity"

### 1.   Claim Language

Independent Claims 1 and 6 of the '287 Patent refer to a first tab that is configured to "cover the concavity." Specifically, Claim 1 of the '287 Patent recites:

> ". . . the first tab . . . configured to ***cover the concavity*** of the upper side of the center panel of the spout when the first tab is in the first position and provide access to the spout when in the second position . . ."

'287 Patent, col. 5, line 63 - col. 6, line 3; see also '287 Patent, col. 8, II. 8-17 (Claim 6).

### 2.   Proposed Constructions

Alliance asks the Court to construe "cover the concavity" as follows: "To overlay or match the cavity or hollow defined by the curvilinear portion of the top of the spout." Joint Claim Chart at 4. Altivity asks the Court to construe "cover"[6] as follows: "exact overlay" or "exact match." Id.

---

[6] As discussed in more detail below, Altivity only asks the Court to construe "cover," not "cover the concavity."

ORDER   17–

### 3.      Agreed Portions of Proposed Claim Constructions

Both parties agree that "cover" means "overlay or match." The parties disagree as to whether the word "exact" should be read into the construction of cover. That issue is addressed below.

Altivity asserts that Alliance did not identify the term "concavity" as a disputed term until November 27, 2007. Joint Claim Chart at 6. Altivity's opening brief reserves the right to dispute Alliance's proposed construction for "concavity," and also reserves the right to put forth a further construction for the term concavity and the term "curvilinear lower side." Altivity's Opening Br. at 19 n.8. Because Altivity, in its responsive brief, did not dispute Alliance's proposed construction of "concavity,"[7] the Court adopts Alliance's proposed construction for the term "concavity," and construes "concavity" to mean "the cavity or hollow defined by the curvilinear portion of the top of the spout."

### 4.      "Exact" Limitation

While the parties agree that "cover" means to "overlay or match," the remaining dispute concerns whether the tab must exactly cover the concavity. Altivity asks the Court to construe "cover" to mean "exact overlay" or "exact match," whereas Alliance disputes any "exactness" requirement.

The claims do not require or otherwise suggest an exact fit, and claim construction principles prohibit adding modifiers to broad claim terms. See Johnson Worldwide Assocs. v. Zebco Corp.,175 F.3d 985, 989 (Fed. Cir. 1999) (citing Federal Circuit cases in which the unmodified terms "reciprocating" and "associating" were not limited to "linear reciprocation" and "explicit association," respectively).

Balanced against this, Altivity invokes the doctrine of claim differentiation, and notes

---

[7] Altivity, in its responsive brief, proposed a new lengthy construction of "cover," but did not propose any construction of "concavity." The Court declines to consider Altivity's new proposed construction of "cover" because Alliance did not have an adequate opportunity to respond to it.

ORDER   18–

1    that Claim 4 recites a method for forming a spout "having a concavity having a lateral

2    centerline substantially aligned with a lateral centerline of the spout." '287 Patent, Claim 4,

3    col. 6, II. 63-65.  The doctrine of claim differentiation does not apply here because Claim 4

4    is an independent claim, not a dependent claim on Claims 1 and 6, and the difference in the

5    language between the claims does not make any claim superfluous.

6          Altivity also relies on Figure 5 in the specification to contrast the lack of a gap

7    between segment 28, the concave edge of the spout, and segment 58, the concave edge of tab

8    "A," (i.e, the "first" tab), with the slight gap between segment 26, the lower edge of the

9    center panel of the spout, and segment 62, the lower edge of tab "B" '287 Patent, Fig. 5; see

10   also Joint Claim Chart, Ex. 3 (Karvelis Decl.) ¶¶ 26-28 (opining on Figure 5).  Altivity infers

11   that the specification teaches an exact match between segments 28 and 58.  This limitation in

12   Figure 5 is ambiguous and will not be imported into the claims.

13         Altivity also relies on the written description's statement that, "Because inward

14   pivoting of *tab "A" 52 is unrestricted by spout 20* . . . both tab "B" 60 and spout 20 are now

15   accessible . . . " '287 Patent, col. 4, II. 50-54 (emphasis added).  Altivity offers expert

16   opinion that this statement shows that the claims require an exact match.  Joint Claim Chart,

17   Ex. 3 (Karvelis Decl.) ¶ 25.  However, the specification makes numerous statements

18   indicating that the spout is not exact about its lower edge.  '287 Patent, col. 2, II. 4-8, col. 4,

19   II. 38-44.  Because the container is formed from a single material, any displacement of lower

20   hinge segment 26 relative to lower hinge segment 62 would correspondingly mean a

21   displacement of concave edge 28 of the spout relative to concave edge 58 of tab "A."  As a

22   result, although the specification states that tab A is unrestricted by the spout, there is

23   significant support in the specification to suggest that slight displacements are tolerated.

24         "A sound claim construction need not always purge every shred of ambiguity."

25   Acumed LLC v. Stryker Corp., 483 F.3d 800, 806 (Fed. Cir. 2007).  In Acumed, the court

26   was asked to construe "sharp;" in doing so, the court refused to incorporate a numerical

ORDER   19–

angular limit required for "sharpness" into the term construction. Id. at 806. In the present case, Altivity asks the Court to construe or limit the degree of precision with which the tab "cover[s] the concavity." Just as engineering tolerances did not need to be woven into a definition in Acumed, this Court declines to inject an "exact" limitation into the construction of the claim term "cover."

### 5.    Alliance's Concession that Tab Not Overlap

In briefs submitted to the Court, Alliance clarified that even under its proposed construction, the first tab does not overlap the concave edge of the spout:

> According to Alliance's construction, the tab covers the concave-shaped concavity at the top of the spout and ***does not overlap the concave edge of the spout itself***.
>
> * * *
>
> [T]he tab must be able to swing into the container when pushed, unrestricted by the top of the spout. . . . Accordingly, ***what the tab 'overlays' or 'matches'*** is the cavity created by the curved shape of the top of the spout, ***not the edge of the spout itself***.

Alliance's Opening Br. at 7:6-7, 23:1-5 (emphasis added).

Alliance's responsive brief further stated:

> The '287 Patent merely ***requires that the tab overlay the whole of the concavity, as opposed to just some portion of it or going beyond it to overlap the edge of the spout***. It requires no more exactitude than that . . . The specification merely requires that ***the bottom of the tab not overlap the top of the spout***."

Alliance's Resp. Br. at 13:22-14:5 (emphasis added).

Alliance's description was partially based on its own expert's opinion:

> The inward pivoting of tab A is unrestricted by spout 20 because tab A overlays or matches the concavity formed by the upper side of spout 20 ***without overlapping the upper side of the center panel of the spout***.

Joint Claim Chart, Ex. 5 (Twede Expert Report) at 7 (emphasis added).

Altivity asks the Court to construe "cover the concavity" to incorporate the representation by Alliance that "the tab . . . does not overlap the concave edge of the spout

ORDER  20–

1    itself."  Altivity's Resp. Br. at 21:14-19, 22:1-3.  The Court accepts the repeated averments

2    by Alliance that the tab does not overlap the concave edge of the spout itself, and

3    incorporates this phrase into the claim construction of "cover the concavity."

4              **6.      Conclusion Re: "Cover the Concavity"**

5         The Court adopts Alliance's proposed construction, with a modification, and

6    construes "cover the concavity" as follows:

7
          "overlay or match the cavity or hollow defined by the curvilinear portion of the
8         top of the spout; the tab does not overlap the concave edge of the spout itself."

9
**IV.   CONCLUSION**

10
          The Court construes the three claim terms, "lower side," "acute angle," and "cover the
11
     concavity," as set forth above.
12
          IT IS SO ORDERED.
13
          DATED this 7th day of March, 2008.
14

15
                                        Thomas S. Zilly
16                                      United States District Judge

17

18

19

20

21

22

23

24

25

26

ORDER   21–